Gustavo Ponce, Esq.
Nevada Bar No. 15084
Mona Amini, Esq.
Nevada Bar No. 15381
**KAZEROUNI LAW GROUP, APC**
6787 W. Tropicana Ave., Suite 250
Las Vegas, Nevada 89103
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
E-mail: gustavo@kazlg.com
    mona@kazlg.com

*Attorneys for Plaintiff,*
*Carol Hart*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| **CAROL HART**, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> **M&T BANK CORPORATION**, <br><br> Defendants. | Case No.: <br><br> **CLASS ACTION** <br><br> **COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT, 12 U.S.C. § 2601, ET SEQ.** <br><br> **DEMAND FOR JURY TRIAL** |

//
//
//
//
//
//
//

# INTRODUCTION

1. Carol Hart (hereinafter "Plaintiff) brings this class action complaint on behalf of herself individually and all others similarly situated, by and through her attorneys, against Defendant M&T Bank Corporation (hereinafter "Defendant") and alleges upon information and belief as follows:

2. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff allege on personal knowledge.

3. As detailed further below, Plaintiff alleges that Defendant failed to conduct a "reasonable investigation" of Plaintiff's account and failed to provide Plaintiff with a complete record of Plaintiff's file in response to a qualified written request, in violation of the Real Estate Settlement Procedures Act.

4. While many violations are described below with specificity, this Complaint alleges violations of each statute cited in its entirety.

5. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendant.

6. Congress found "that significant reforms in the real estate settlement process are needed to ensure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C.§ 2601.

7. To address this finding, Congress passed the Real Estate Settlement Procedures Act, 12 U.S.C. 2601 et. seq., ("RESPA") in 1974.

8. The Consumer Financial Protection Bureau ("CFPB") is the primary regulatory agency authorized by Congress to supervise and enforce compliance of RESPA. 12 U.S.C. § 2617(a).

9. The CFPB periodically issues and amends mortgage servicing rules under Regulation X, 12 C.F.R. § 1024, RESPA's implementing regulation. 12 U.S.C.§ 2617.

10. Under RESPA and Regulation X, loan servicers, including Defendant, must provide borrowers with specific account information available to them in the regular course of business upon receiving a Qualified Written Request ("QWR") or a Request for Information ("RFI") from the borrower. 12 U.S.C. § 2605(e)(1)(A); 12 C.F.R §§ 1024.35(a).

11. A servicer must respond within 30 days to a QWR for information or an RFI in one of two ways: (1) provide the requested information, or (2) conduct a "reasonable search" for the requested information and provide the borrower with written notification explaining the basis for the servicer's determination that the requested information is "not available." 12 C.F.R. § 1024.35(d)(1)(i) – (ii).

12. In its official commentary to Regulation X, the CFPB outlines what constitutes "not available." Information is "not available" if: "[(1.)] The information is not in the servicer's control or possession, or [(2.)] The information cannot be retrieved in the ordinary course of business through reasonable efforts." 12 C.F.R. § 1024, Supp. I, ¶ 36(d)(1)(ii).

13. As an example of "available" information, the CFPB provides the following in its official commentary to Regulation X:

> A borrower requests a copy of a telephonic communication with a servicer. The servicer's personnel have access in the ordinary course of business to audio recording files with organized recordings or transcripts of borrower telephone

calls and an identify the communication referred to by the borrower through reasonable business efforts. The information requested by the borrower is **available to the servicer.** 12 C.F.R. § 1024, Supp. I, ¶ 36(d)(1)(ii) (empashis added).

14. Defendant has failed to fulfill its duty to provide information available to it in the regular course of business to Plaintiff upon receipt of Plaintiff's QWR and RFI.

15. As alleged in greater detail below, Defendant has demonstrated a "pattern or practice" of failing to adequately respond to borrowers' requests for account information, which makes Defendant liable for statutory damages in an amount up to $2,000 for each failure to adequately respond. 12 U.S.C § 2605(f).

16. Notwithstanding this glaring failure to abide by its statutory duty, and despite Plaintiff informing Defendant of its failure, Defendant continues to incorrectly state that the recordings are "privileged or proprietary."

## JURISDICTION AND VENUE

17. This court has subject matter jurisdiction over this action under 28 U.S.C 1331 because the action arises out of violations of RESPA, a federal law.

18. This Court has personal jurisdiction over Defendant because Defendant conducts business in Nevada and maintains significant contacts within the state and this federal district.

19. Venue is appropriate in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in Henderson, Clark County, Nevada which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and (iii) Defendant conducted business within this judicial district at all relevant times.

**PARTIES**

20. At all relevant times, Plaintiff is a resident and citizen of Clark County, in the State of Nevada. Plaintiff is a "person" as defined by 12 U.S.C. § 2602(5).

21. Defendant is a commercial banking corporation doing business in the State of Nevada, with a principal place of business in Buffalo, New York.

22. Defendant is a "person" as defined by 12 U.S.C. § 2602(5).

23. Defendant is, and was at all times, a loan "servicer" as defined by 12 § C.F.R. § 1024.3.

**GENERAL ALLEGATIONS**

24. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as if fully stated herein.

25. Defendant serviced Plaintiff's mortgage loan for a residence located in Henderson, Nevada.

26. Plaintiff was concerned about the possibility of an error and decided to reach out to their servicer.

27. On or around January 17, 2023, Plaintiff, through counsel, mailed a QWR letter via certified mail to Defendant pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e), and Regulation X, 12 C.F.R. §§ 1024.35, 1024.36 (the "QWR Letter").

28. Plaintiff's QWR Letter was mailed with a signed authorization to furnish and release information to their counsel, as permitted in 12 U.S.C. § 2605(e)(1)(A).

29. In this QWR Letter, Plaintiff included her name, home address, loan number, and a statement disputing the validity of their debt, requesting several documents including "[a] copy of any and all recordings…[and a] copy of any and all transcripts of conversations with [Plaintiff] or any other person concerning [Plaintiff's] account."

30. The QWR Letter was both a Notice of Error and a Request for Information pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e), and

CLASS ACTION COMPLAINT

12 C.F.R. §§ 1024.35, 1024.36, because Plaintiff disputed the validity of the debt they allegedly owed and because they requested information regarding the servicing of their loan.

31. The QWR Letter was received by Defendant on or around January 21, 2023.

32. Defendant provided written response acknowledging receipt of Plaintiff's QWR Letter within five (5) days, as required by 12 U.S.C. § 2605(e)(1)(A).

33. Plaintiff's counsel received a letter from Defendant dated January 24, 2023, in which Defendant incorrectly alleged that the QWR Letter sent by Plaintiff pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e), and 12 C.F.R. §§ 1024.35, 1024.36, was not entitled to treatment as a QWR. Defendant alleges in their response that, "[Plaintiff's] purported QWR fails to provide necessary detail regarding any specific error(s) made by the servicer in connection with the loan, and as such, M&T does not consider [Plaintiff's] request to be entitled to treatment as a qualified written request or notice of error."

34. Pursuant to the Real Estate Settlement Procedures Act 12 U.S.C. § 2605(e)(1)(B) Plaintiff's letter satisfies the requirement that a QWR shall be a written correspondence that, "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."

35. Defendant's letter dated January 24, 2023, provided some documentation and information regarding the Verification of Mortgage, Validation of Debt Notice, Note, Mortgage Instrument/Deed of Trust, VA Assumption Policy Rider, etc., however, Defendant failed to provide any of the requested audio recordings or transcripts of said recordings.



36. Defendant failed to provide complete documentation in its possession that was responsive to Plaintiff's QWR Letter.

37. In Defendant's response, Defendant indicated that several of Plaintiff's requests were "proprietary to [Defendant] and therefore, [would] not be responded to or provided."

38. Due to Defendant's failure to provide the requested recordings, Plaintiff sent a second QWR letter to Defendant via certified mail on November 6, 2023 (the "Second QWR Letter").

39. In the Second QWR Letter, Plaintiff again requested that Defendant provide the audio recordings, which the CFPB's commentary to Regulation X specifically contemplates as requested information. *See* 12 C.F.R. § 1024, Supp. I, ¶ 36(d)(1)(ii).

40. The follow up letter was sent by Plaintiff in an effort to obtain information related to Plaintiff's account.

41. The Second QWR Letter was received by Defendant on November 13, 2023.

42. Plaintiff's counsel received a letter in response to Plaintiff's follow up Second QWR Letter from Defendant dated November 13, 2023.

43. Defendant failed to produce the requested recordings and transcripts.

44. As of the date of the filing of this Complaint, Plaintiff has not received any other documents or supplemental responses from Defendant relating to the QWR letters, and Defendant has refused to provide any of the requested audio recordings to Plaintiff.

45. Defendant's refusal to provide requested information to borrowers who submit valid QWR letters is, upon information and belief, a matter of standard business policy and practice for Defendant.

46. Plaintiff is informed and believes and hereupon alleges that Defendant has refused to produce recordings for possibly hundreds if not thousands of consumers that have requested them.

47. Plaintiff is informed and believes and hereupon alleges that Defendant has the ability to easily produce the requested recordings through reasonable business efforts.

48. Plaintiff is informed and believe and hereupon alleges that Defendant has no proper basis to withhold its audio recordings and transcripts of conversations with Plaintiff on the basis that are "proprietary overly burdensome, and duplicative."

49. Defendant's blanket refusal to Plaintiff appears to be a uniform template response sent to many consumers, which shows a pattern and practice of non-compliance with RESPA.

50. Furthermore, at least two requests were made by Plaintiff for the recordings in question and Defendant failed to produce the recordings in response to each request which further illustrates its pattern and practice of non-compliance.

51. Defendant's failure to produce the audio recordings inhibits Plaintiff's effort to remedy issues with their mortgage.

52. As a result of Defendant refusing to provide the requested information, Plaintiff suffered actual damages including but not limited to the cost of the postage for the QWR letters.

## CHOICE OF LAW

53. The State of Nevada has sufficient interest in the conduct at issue in this complaint, such that Nevada law may be uniformly applied to the claims of the proposed Class.

54. Defendant does substantial business in Nevada, and a significant portion of the proposed Class are located in Nevada. Moreover, Defendant avails itself to these Nevada citizens by soliciting directly to them.

55. The State of Nevada also has the greatest interest in applying its law to Class members' claims.

CLASS ACTION COMPLAINT

56. If other states' laws were applied to Class members' claims, Nevada's interest in discouraging resident corporations from engaging in the sort of unfair and deceptive practices alleged in this complaint would be significantly impaired.

57. Nevada could not effectively regulate companies like Defendant, which does business throughout the United States, if it can only ensure remuneration for consumers from one of the 50 states affected by conduct that runs afoul of its laws.

## CLASS ACTION ALLEGATIONS

58. Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated (the "Class"), pursuant to Federal Rule Civil Procedure 23(b)(1),(b)(2) and/or (b)(3).

59. The putative Class that Plaintiff seeks to represent is composed of:

> All persons within the United States who have or have had a mortgage loan with Defendant, and who within three years from the filing of this Complaint have requested copies of audio recordings or transcripts of phone calls between themselves and Defendant pursuant to 12 U.S.C. § 2605(e)(1)(A) and 12. C.F.R. § 1024.36, and who have subsequently been denied access to those audio recordings by Defendant.

60. Excluded from the Class are any of Defendant's officers, directors, employees, affiliates, legal representatives, attorneys, heirs, and assigns, and any entity in which Defendant has a controlling interest. Judicial officers presiding over this case, its staff, and immediate family members, are also excluded from the Class.

61. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more. Such information can be ascertained through Discovery from records maintained by Defendant. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.



62. There is a well-defined community of interest among the members of the Class because common questions of law and fact predominate, Plaintiff's claims are typical of the members of the Class, and Plaintiff can fairly and adequately represent the interests of the Class.

63. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

    a. Whether Defendant failed to provide audio recordings of telephone calls between Defendant and Class members as required under RESPA;
    b. Whether Defendant failed to conduct a "reasonable investigation" as required pursuant to 12 C.F.R. § 1024.35(d)(1)(i) – (ii);
    c. Whether Plaintiff and the Class are entitled to damages under 12 U.S.C § 2605(f);
    d. Whether Defendant demonstrates a "pattern or practice" of failing to respond to borrowers' QWRs and RFIs;
    e. Whether Defendant's conduct violates 12 U.S.C. § 2601 *et. seq.*; and
    f. Whether Plaintiff and the putative Class members are entitled to injunctive relief as sought herein

64. Plaintiff's claims are typical of those of the other Class members because Plaintiff, like every other Class member, requests audio recordings or transcripts of telephone calls between Plaintiff and Defendant, and Defendant refused to provide them.

65. Plaintiff will fairly and adequately protect the interests of the Class. Moreover, Plaintiff has no interest that is contrary to or in conflict with those of the Class Plaintiff seeks to represent during the Class Period.

66. In addition, Plaintiff has retained competent counsel experienced in Class action litigation to further ensure such protection and intend to prosecute this action vigorously.

- 10 -
CLASS ACTION COMPLAINT

67. The prosecution of separate actions by individual members of the Class and would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the Defendant in the State of Nevada and would lead to repetitious trials of the numerous common questions of fact and law in the State of Nevada.

68. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a Class action. As a result, a Class action is superior to other available methods for the fair and efficient adjudication of this controversy.

69. Proper and sufficient notice of this action may be provided to the Class members through direct mail and email.

70. Moreover, the Class members' individual damages are insufficient to justify the cost of litigation, so that in the absence of Class treatment Defendant's violations of law inflicting substantial damages in the aggregate would not be remedied without certification of the Class.

71. Absent certification of this action as a Class action, Plaintiff and the members of the Class will continue to be damaged by Defendant's refusal to comply with RESPA.

## CAUSE OF ACTION

## Violations of The Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et. seq.

72. Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

73. Plaintiff's loans with Defendant were at all times a "federally related mortgage loan" as defined by 12 § U.S.C. 2602(1).

74. Defendant is, and was at all times, a loan "servicer" as defined by 12 § C.F.R. § 1024.2.

75. Plaintiff and Defendant are "persons" as defined by 12 U.S.C. § 2602(5).
76. A failure to follow regulations promulgated by the CFPB in Regulation X is per se a violation of RESPA. 12 U.S.C. § 2605(k).
77. Plaintiff's request for audio recordings was both a QWR pursuant to 12 U.S.C. § 2605(e)(1)(A) and an RFI pursuant 12 C.F.R. § 1024.36.
78. Audio recordings and transcripts of phone calls with borrowers are information "available in the regular course of business" to Defendant. See 12 C.F.R. § 1024, Supp. I, ¶ 36(d)(1)(ii).
79. Defendant failed to provide Plaintiff with requested information available to Defendant in the ordinary course of business. Consequently, Defendant violated 12 U.S.C. § 2605(e), 12 U.S.C. § 2605(k) and 12 C.F.R. § 1024.36.
80. Defendant further violated 12 U.S.C. § 2605(e), 12 U.S.C. § 2605(k), and 12 C.F.R. § 1024.36 by failing to adequately investigate and respond to Plaintiff's requests.
81. Plaintiff is informed and believes that at least 40 other similarly-situated borrowers who have requested audio recordings or transcripts of telephone calls between themselves and Defendant only to be likewise denied access to that information by Defendant. This is sufficient to demonstrate a "pattern or practice" under RESPA. As such, Defendant is liable for statutory damages in the amount of up to $2,000 per violation pursuant to 12 U.S.C § 2605(f)

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendant:

- That the Court determine this action may be maintained as a Class Action by certifying this case as a Class Action as to the Class;
- That the Court appoint Plaintiff to serve as the Class Representative in this matter and appoint Plaintiff's Counsel as Class Counsel;
- That Defendant's wrongful conduct alleged herein be adjudged and

decreed to violate the statutes and laws asserted herein; and

- That Plaintiff and the Class be awarded injunctive relief prohibiting such conduct in the future.
- Injunctive relief prohibiting such conduct in the future.
- Injunctive relief ordering Defendant to release audio recordings and transcripts of telephone calls to Plaintiff and Class members.
- Statutory damages in an amount of $2,000 per violation to Plaintiff individually and to each member of the Class pursuant to 12 U.S.C § 2605(f).
- An award of actual damages according to proof per violation to Plaintiff individually and to each member of the Class pursuant to 12 U.S.C. § 2605 (f).
- Attorneys' fees and costs
- Any and all further relief that this Court deems just and proper.

**TRIAL BY JURY**

82. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

DATED this 16th day of May 2024.

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: /s/ Gustavo Ponce
GUSTAVO PONCE, ESQ.
MONA AMINI, ESQ.
6787 W. TROPICANA AVE., SUITE 250
LAS VEGAS, NEVADA 89103
*Attorneys for Plaintiff*